Eminent domain; avigation easement.' — Plaintiff sues to recover just compensation for the taking of an avigation easement over its lands in Maricopa County, Arizona. On September 5, 1961, Trial Commissioner Roald A. Hogenson filed the following report of his findings of fact:
1. Plaintiff is an Arizona corporation, and at all times material in this case, is and was the owner of the following described land located in Maricopa County, Arizona, as follows:
The Southeast Quarter (SE%) of Section Twenty-eight (28), the West Half (W%) of Section Twenty-seven (27), the East Half (E*4) of the East Half (E%) of Section Thirty-three (83), and the West Plalf (W%) of Section Thirty-four (34), all in Township Three (3) North, Range One (1) West, Gila and Salt River Base and Meridian.
2. Third party, Kansas City Life Insurance Company, a Missouri corporation, authorized to do business in Arizona, is the holder of a valid real estate mortgage on the above-described property, dated October 1, 1958, and duly recorded in Maricopa County, Arizona. The answer of this third party, filed September 26,1960, states that it makes no claim to any funds or moneys or judgment to be recovered by plaintiff against defendant, if such judgment is rendered, and that any such sums or moneys may be paid directly to plaintiff. Third party further states that in the event a judgment is rendered in this case that defendant has taken any portion of plaintiff’s land or taken an easement thereon, such judgment shall be binding upon the third party.
*701 3. The land described in finding 1 is all farmland devoted to the raising of crops on a commercial basis, consisting of grapes, citrus, alfalfa, and various kinds of vegetables. The land of plaintiff is in one piece and lies to the north and northeast of the Luke Air Force Base, a large airport owned and operated by the defendant for the use of military aircraft, the closest portion of the land of plaintiff being adjacent to the Luke Air Force Base and being separated therefrom only by a county road.
4. The Luke Air Force Base was formerly known as Luke Field. It was established in February 1941. The construction of runways at the field was commenced in April 1941, and completed in December 1942. The runways consisted of a north-south runway, a northwest-southeast runway, a northeast-southwest runway, and an east-west runway. At the time of the completion of these runways in 1942, the north-south runway Was approximately 4,285 feet long, and each of the other runways was approximately 4,500 feet in length.
5. Luke Field was used during the period 1942-1948 by the defendant for the training of military pilots. Kecipro-cating-engine (propeller-type) military aircraft utilized all the runways at the field during that period. Although airplanes taking off to the northeast from, or landing from the northeast on, the northeast-southwest runway at Luke Field during the period 1942-1946 flew over plaintiff’s land, those flights by propeller-type military aircraft did not interfere substantially with the plaintiff’s use and enjoyment thereof.
6. Luke Field was deactivated by the defendant on November 30, 1946.
7. During the Korean crisis, the former Luke Field was reactivated by the defendant in January 1951 as a permanent military airport, and was designated as Luke Air Force Base. Jet aircraft were assigned to the base, and the training of combat pilots in the operation of such aircraft was begun at the base.
8. During the year 1951, the northeast-southwest runway at the Luke Air Force Base was not used for the operation of jet aircraft because it was not long enough for that purpose. By the end of December 1951, however, the northeast- *702 southwest runway had been lengthened to 8,800 feet. This runway was then put into regular use for takeoffs and landings by jet aircraft on January 1,1952.
9.During the period from January 1, 1952, to May 31, 1954, inclusive, flights by aircraft from the northeast-southwest runway at the Luke Air Force Base were made during the several months in the numbers indicated below:

10. Approximately 90 percent of the takeoffs referred to in finding 9 were made toward the southwest, and the remaining 10 percent were made toward the northeast and in the direction of plaintiff’s land.
11. In 1954 the existing northeast-southwest runway at the Luke Air Force Base was again extended by the defendant, so that by June 1,1954, it was 9,910 feet in length. In addition, construction was begun in January 1954 on a second northeast-southwest runway situated parallel to and relatively near the first northeast-southwest runway. The second northeast-southwest runway was completed to a length of 10,000 feet and placed in regular operation for use by jet aircraft on June 1,1954.
12. During the period from June 1, 1954, to October SI, 1958, inclusive, flights by aircraft, either takeoffs or landings, from the two northeast-southwest runways at the Luke Air Force Base were made during the several months in the numbers indicated below:

*703

13. Approximately 90 percent of the takeoffs referred to in finding 12 were made toward the southwest, and the remaining 10 percent were made toward the northeast and in the direction of the plaintiff’s land.
14. The number of actual landings and takeoffs from November 1958 to September 1960 from the two runways are indicated below:

1958

November_ 8,324
December_ 7,624

1959

January _ 9,237
February_ 8,774
March_11,949
April -12, 409
May_12, 070
June_13, 732
July_12,408
August-11, 430
September_12,172
October_10,180

1959

November_10, 073
December_ 7,879

1960

January _10,450
February _ 8,876
March _ 9,196
April _11,623
May_ 9, 717
June_ 9,184
July_ 9,404
August_10, 787
September _12, 725
15. Since January 1951, when Luke Air Force Base was reactivated, aircraft in taking off from or landing on the northeast end of the original runway (3B.21L) have frequently flown over that portion of plaintiff’s property within the approach zone to that runway at elevations as low as 75 feet above the ground.
16. Since June 1954, when the new parallel northeast-southwest runway (3L21R) was put in operation, aircraft in taking off from or landing on the northeast end of that *704 runway have frequently flown over that portion of plaintiff’s property within the approach zone to that runway at elevations as low as 100 feet above the ground.
17. Prior to June 1,1954, aircraft taking off from or landing on the northeast end of the original runway (3R21L) did not fly over the land of plaintiff lying outside the approach zone to the original runway (3R21L) except occasionally and infrequently, and did not fly close enough to the homes, headquarters building, and packing sheds located on the western part of plaintiff’s property to interfere with the operations carried on in these buildings, and such flights did not interfere substantially with the plaintiff’s use of its land lying outside the approach zone to that runway.
18. Subsequent to June 1, 1954, when the new parallel northeast-southwest runway (3L21B.) was put into operation, aircraft in taking off from or landing on the northeast end of that runway have frequently flown over that portion of plaintiff’s property within the approach zone to that runway comprising an area of 220 acres, lying outside of the approach zone to the original runway, as shown on plaintiff’s exhibits 2 and 3 in evidence, at elevations as low as 100 feet above the ground over the portion of the 220-acre parcel lying closest to the end of the runway, and at elevations of from 300 to 500 feet above the ground over that portion of the 220-acre parcel lying farthest from the runway.
19. During the period from June 1,1954, to June 30,1960, the quantity of defendant’s military airplanes at Luke Air Force Base was substantially greater, both in numbers and types, than in the period from January 1951 to June 1,1954.
30. Since June 1, 1954, the defendant has put into use at Luke Air Force Base jet planes of different types than those in use at the base prior to that time, which new jet planes are substantially larger, faster, and noisier than the planes previously in use and which new jet planes usually fly at lower altitudes over plaintiff’s land than the earlier type jet planes.
21. Since June 1, 1954, when construction of the second northeast-southwest runway was completed, flights by jet aircraft taking off from this runway to the northeast and landing thereon from the northeast have passed over the 220- *705 acre parcel lying within the approach zone of such runway, but lying outside of the approach zone of the earlier runway, so frequently and at such low altitudes as to interfere seriously with the use and enjoyment of this 220-acre tract of land by plaintiff, and, in addition, such flights have flown so close to the nearby homes, headquarters buildings, and packing sheds, located in close proximity to such 220-acre approach zone, as to make conversation difficult, and at times impossible, and to interfere with and delay the operations carried on in such buildings.
22. Since June 1,1954, aircraft from Luke Air Force Base have crashed on the above-mentioned 220-acre parcel of land and on nearby portions of plaintiff’s land, and various items such as wing tanks, weights, and other heavy objects have dropped from the aircraft on said parcel of land and other nearby portions of plaintiff’s land.
23. Piloted military aircraft of the following types have been flown at low altitudes frequently over the plaintiff’s land:
L-20 B-25
C-47 F-84 BCE&G
H-19 Helicopter F-84F
H-21 Helicopter F-80
AT-6 T-33
F-51 F-100
B-26 C-45
Piloted military aircraft of the following types have been flown at low altitudes occasionally over the plaintiff’s land:
F-86 T-29
F-101 B-66
F-102 F-89
F-104 F-94
B 47 C-54
B-56 C-123
C-124 U-3A
KC-97 H-43B
24.The interferences by the defendant’s jet aircraft with the plaintiff’s use and enjoyment of its land have resulted from the noise made and the disturbances created by such aircraft. The noise, averaging 105 decibels and approxi *706 mating the situation inside a very noisy factory, is inordinately loud and annoying and constitutes a definite hindrance to communication. The plaintiff’s farming operations on the land require the use of many field workers requiring specialized skill and knowledge and, as a result of the low and frequent flights of jet aircraft over plaintiff’s land, the farming operations on the land have become more difficult, more expensive and less productive.
The noise, crashes, and items dropped from the aircraft have rendered the field workers and employees of the plaintiff fearful and apprehensive. The flights of jet aircraft over plaintiff’s land have rendered it undesirable for normal farming operations, and the land has suffered serious loss in value.
25. Luke Air Force Base is a permanent military airport and continued flights by jet aircraft at low altitudes and at frequent intervals over such lands are to be expected for the indefinite future.
26. The flights of aircraft over the above-mentioned 220-acre parcel of land constitute a permanent taking of an avigation easement over that area, at elevations of 100 feet and higher above ground level, by the defendant on June 1, 1954.
27. In the event the court determines that defendant is liable for the taking of an avigation easement over plaintiff’s land as of June 1, 1954, the resulting diminution in value of plaintiff’s land as of that date, as stipulated by the parties, shall be $40,500.
On February 2, 1962, the case came before the court on defendant’s motion for entry of judgment, and plaintiff’s response thereto, in accordance with the report of the trial commissioner, and the following order, as amended March 19, 1962, was entered:
This case comes before the court on defendant’s motion for entry of judgment filed on January 16, 1962, and plaintiff’s response thereto filed on January 29, 1962, moving that the court enter judgment in this case in favor of the plaintiff for the sum of $40,500 in accordance with the report of Trial Commissioner Hogenson *707 filed September 5,1961, attached hereto and made a part hereof. Upon consideration thereof,
It is ordered this second day of February 1962, that defendant’s motion is granted and that judgment be and the same is entered for the plaintiff in the sum of forty thousand five hundred dollars ($40,500), together with interest thereon, as a part of just compensation, at the rate of four percent (4%) per annum, from June 1, 1954, the date of taking, to date of payment.
It is eurti-ieR ordered as a part of the judgment that the defendant is vested since the date of the taking, June 1,1954, with a perpetual easement of flight for aircraft of any character of the same or similar types as those that are set forth in Finding 28 of the Commissioner’s report filed in this case on September 5, 1961, over a 220-acre parcel of plaintiff’s land, as is described in Finding 18 of the report, at an elevation of 100 feet and higher above the ground.